UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN MODERN HOME INSURANCE COMPANY, INC., an Ohio corporation, d/b/a American Modern Insurance Company,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>ROBERT E. GALLAGHER, JR., and WHITE & OLIVER, a California professional corporation,<br><br>　　　　　　　Defendants. | Civil No. 06CV1157 JAH(RBB)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. # 73]** |

## INTRODUCTION

Now pending before this Court is the motion by defendants Robert E. Gallagher, Jr. ("Gallagher") and his law firm, White & Oliver ("W&O") (collectively "defendants") for summary judgment. The motion has been fully briefed by the parties and oral argument has been entertained. After a careful consideration of the pleadings and relevant exhibits submitted by the parties, the oral argument presented at the hearing, and for the reasons set forth below, this Court DENIES defendants' motion in its entirety.

## BACKGROUND

This is an action for legal malpractice and breach of fiduciary duty brought by an insurer, plaintiff American Modern Home Insurance Company, Inc. ("plaintiff" or "AMIC") against defendants.

1.    **Factual Background**[1]

The complaint alleges defendants negligently handled the underlying personal injury action which involved AMIC's insured, Virgilio Martinez ("Martinez"), the owner of a rental home with a swimming pool that was equipped with a diving board located at 1633 Los Robles Drive in Bakersfield, California. The incident that formed the basis for the underlying action occurred when Martinez' tenant hosted a party on June 19, 2004. During that party, a guest, Neal Raymond ("Raymond") dove into the pool and broke his neck when he struck his head, rendering him a quadriplegic. Raymond subsequently retained counsel, Gregory Chudacoff, to represent him in his claim for personal injuries resulting from the diving board incident. In early September 2004, when Martinez received a letter from Chudacoff advising him of Raymond's claim, Martinez then contacted his insurance company, AMIC.

AMIC assigned adjuster Marcie Anderson ("Anderson") to handle the claim. At the direction of her supervisor, Mark Honschopp ("Honschopp"), a Casualty Technical Manager, Anderson retained Rob Bycott ("Bycott") of Cunningham & Lindsay, an independent adjusting firm, to assist in investigating the incident. Anderson was instructed by AMIC to retain Gallagher[2] on September 16, 2004. Gallagher agreed to be retained.

On September 23, 2004, by letter with a carbon copy sent to Anderson, Bycott confirmed Mr. Martinez' decision not to give his permission to AMIC to disclose his policy limits to Raymond's counsel, Chudacoff. Nevertheless, based on Anderson's claim that she believed she had received consent to reveal the policy limits during a telephone conversation with Mr. Martinez' wife on September 16, 2004, Anderson disclosed that Martinez' policy limits were $300,000 during a telephone conversation with Marie Dugan

---

[1] The following background facts are largely undisputed. Any material facts that are disputed will be addressed herein as deemed appropriate.

[2] Gallagher was employed at Higgs, Fletcher & Mack at the time he was retained by AMIC. Approximately two months later, on November 8, 2004, Gallagher terminated his employment with Higgs, Fletcher & Mack and began employment with White & Oliver on an "of counsel" basis.

("Dugan") of Chudacoff's office on October 4, 2004. There is no evidence indicating that Anderson informed Gallagher of the disclosure. On October 20, 2004, Dugan then demanded, by letter, payment of the policy limits by AMIC in order to resolve the matter. Gallagher claims he never received a copy of Dugan's October 20, 2004 letter.

Chudacoff made a second demand for the $300,000 liability policy limits by letter dated November 9, 2004 (faxed to AMIC on November 10, 2004) indicating Raymond would accept less than the full $300,000 policy limits in resolution of his claim. The demand letter stated that, if no response was received within seven days from the date of the letter, the offer to settle would be withdrawn. After speaking with Gallagher, Anderson sent a letter to Chudacoff indicating AMIC needed to conduct a "complete investigation" of Raymond's claim but did not specifically respond to the demand. Gallagher claims he received a copy of Anderson's letter on November 16, 2004,[3] the day Gallagher calculates the offer expired. Chudacoff informed Gallagher by letter dated February 28, 2005 (received by White & Oliver via fax on March 1, 2005) that any policy limits settlement demands were withdrawn effective immediately. Gallagher claims he never received a copy of that letter.

Raymond retained attorney Chris Angelo ("Angelo") in February 2005 to represent him in his personal injury action arising out of the June 19, 2004 diving board incident. Angelo filed suit on behalf of Raymond on July 13, 2005. AMIC substituted Peter Doody ("Doody") of Higgs, Fletcher & Mack as Martinez' counsel in place of defendants in October 2005 and retained David Evans ("Evans") of Haight, Brown & Bonesteel to advise AMIC concerning any insurance bad faith issues that may have arisen due to its handling of Raymond's claim.

In November 2005, Doody attempted to tender the $300,000 policy limits to settle Raymond's claim, which Angelo rejected as untimely by letter dated December 8, 2005. Angelo made a settlement demand of $5.5 million to AMIC in January 2006. AMIC

---

[3] Plaintiff disputes that the letter was received on November 16, 2004, pointing to evidence indicating Gallagher had reviewed materials from AMIC on November 11, 2004, which could have been the letter at issue. *See* Opp. at 4.

1  accepted that offer in February 2006.

2  **2.    Procedural History**

3  The instant malpractice complaint was filed on May 31, 2006. Defendants
4  answered the complaint on June 19, 2006. Defendants' motion for summary judgment
5  was filed on June 29, 2007, along with a request of judicial notice of certain documents.
6  Plaintiff's opposition was filed on August 27, 2007. Defendants' reply brief was filed on
7  August 31, 2007.[4] At that time, defendants also a motion to strike Anderson's declaration
8  filed by plaintiff in support of its opposition. Plaintiff filed an opposition to the motion
9  to strike on September 5, 2007. In addition, both parties filed objections to the evidence
10 submitted.[5] Oral argument on the motion was entertained on September 10, 2007, after
11 which the motion was taken under submission.

## DISCUSSION

13 **1.    Legal Standard**

14 Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil
15 Procedure where the moving party demonstrates the absence of a genuine issue of material
16 fact and entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp.
17 v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing
18 substantive law, it could affect the outcome of the case. *See* Anderson v. Liberty Lobby,
19 Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

---

[4] Defendants move to strike the declaration of Marcie Anderson prepared on April 18, 2006, on the grounds that defendants were prohibited from deposing Anderson at her subsequent deposition about her declaration based on attorney-client privilege objections. Mot. to Strike at 2. Plaintiff opposes the motion as procedurally improper under Rule 12(f) of the Federal Rules of Civil Procedure, and substantively improper because defendants, "did in fact inquire as to Ms. Anderson's declaration" during the deposition. Opp. to Mot. to Strike at 3 (citing various pages from Anderson's deposition transcript). Plaintiff contends that defendants simply elected not to inquire into the declaration which is not a valid reason to strike it. Id. at 4. A review of plaintiff's citations reveals that Anderson was, in fact, deposed on some of the statements she made in the declaration at issue. Therefore, defendants' motion to strike is DENIED.

[5] Both parties filed various objections to the evidence submitted by their opposing party. Plaintiff filed objections to defendants' separate statement of material facts, to which defendants filed a response supporting the admissibility of the statements at issue. Plaintiff also filed objections to defendants' request for judicial notice. Defendants object to plaintiff's separate statement of material fact. Those objections that are material to the issues presented are addressed in the body of this Order. Any remaining objections not addressed in the body of this Order are not material and are, therefore, OVERRULED as moot.

A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See* Celotex, 477 U.S. at 323. The moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322-23. Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." Id. at 325. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the moving party's claim. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990); United Steelworkers v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989). "Rather, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." Lujan, 497 U.S. at 885 (quoting Celotex, 477 U.S. at 323). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See* Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); *see also* Anderson, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts

1  showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quoting
2  Fed.R.Civ.P. 56(e)) (internal quotations omitted).

3  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary
4  judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630
5  (9th Cir. 1987). "The district court may limit its review to the documents submitted for
6  purpose of summary judgment and those parts of the record specifically referenced
7  therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir.
8  2001). Therefore, the court need not "scour the record in search of a genuine issue of
9  triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards v.
10 Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)).

11 The court may not make credibility determinations, and inferences to be drawn
12 from the facts must be viewed in the light most favorable to the party opposing the
13 motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); *see* Anderson, 477
14 U.S. at 255; Matsushita, 475 U.S. at 587.

**2. Analysis**

The instant complaint alleges two causes of action against defendants: (1) professional negligence; and (2) breach of fiduciary duty. Defendants move for summary judgment as to both causes of action on the following grounds: (a) defendants owed no duty to AMIC in regards to settlement; (b) the "unclean hands" doctrine bars plaintiff's recovery; and (c) AMIC cannot establish Gallagher's acts or omissions were the proximate cause of its damages.[6]

---

[6] Defendants also initially argue that, because plaintiff breached its own duty owed to Martinez to properly consider settlement of Raymond's claim early on, defendants cannot be held liable for plaintiff's breach. *See* Mot. at 14-18. Plaintiff, in opposition, correctly notes that this contention is a "red herring" because its own duty to Martinez has no bearing on Gallagher's duty to AMIC. Opp. at 9 & n.7. Defendants tacitly agree with this position since they point out the extent of their own duty to act "does not affect AMIC's obligation to Martinez" and thus must agree the converse is true. Mot. at 16. Plaintiff also notes that, in any event, it did not breach its duty as no bad faith cause of action accrued against AMIC for its actions concerning settlement because it "continued to defend its insured through settlement to protect him from any such excess judgment." Opp. at 9 (citing Archdale v. American International Specialty Lines Ins. Co., 154 Cal. Rptr.4th 449 (2007)(concluding that a cause of action for breach of contract based on an insurer's failure to settle a claim does not exist until a judgment in excess of the policy limits has been rendered against the insured)).

### a. Defendants' Duty to AMIC

Defendants contend, in their moving papers, that they owed no duty to AMIC in regards to the settlement offers that are the crux of this case.[7] Defendants explain that AMIC owes a non-delegable duty to its insured to settle the underlying claim within its policy limits and is subject to bad faith liability for breach of that duty. Mot. at 14-16 (citing, *inter alia*, Garner v. American Mut. Liability Ins. Co., 31 Cal.App.3d 843, 847 (1973); Crisci v. Security Ins. Co. of New Haven, 66 Cal.2d 425 (1967); Communale v. Traders & Gen. Ins. Co., 50 Cal.2d 654 (1958)). Defendants contend they cannot be held liable for failing to act in regards to the November 9, 2004 settlement offer when the duty regarding settlement falls squarely upon AMIC alone. Id. at 16. In opposition, plaintiff does not dispute it has a duty to settle a third party claim within its policy limits if it is reasonable to do so. Opp. at 9. However, plaintiff claims that the issue of whether Gallagher owed a duty to AMIC in regards to the settlement offers is a question of fact for the jury to decide.[8] Id. at 10.

---

[7] Defendants additionally contend that the receipt of the policy limits demand from Chudacoff created a conflict of interest between AMIC and Martinez, thereby vitiating any duty that defendants may have previously owed to AMIC. *See* Mot. at 26-30. Plaintiff points out, in opposition, that defendants provide no authority for such a theory, arguing that the case authority in this area does not suggest that the existence of such a conflict nullifies the relationship between counsel and insurer but, instead, gives counsel options for handling the conflict by full disclosure of the conflict or withdrawal of counsel from the case, neither of which happened here. Opp. at 26-28 (citing Merritt v. Reserve Ins. Co., 34 Cal.App. 3d 858, 870 (1973); Lysick, 258 Cal.App.2d at 147; Betts v. Allstate Ins. Co., 154 Cal.App.3d 688, 716 (1984)). Plaintiff is correct that the case law does not suggest that a conflict arising between an insurance company and its insured nullifies an insurance defense attorney's duty to its insurance company client in favor of having a sole duty to the insured and defendants do not dispute this in reply. Thus, defendants' additional argument regarding nullification of its duty due to conflict fails.

[8] Plaintiff additionally argues that, if this Court were to disagree with defendants' position regarding its lack of duty owed to AMIC, then it must necessarily find that defendants did owe such duty and requests that partial summary judgment be *sua sponte* entered in favor of plaintiff on the issue. Opp. at 13. Plaintiff, in its introduction, notes that "[e]ven absent a cross-motion for summary judgment, the Court may enter summary judgment *sua sponte* against a moving party if such party has had a 'full and fair opportunity to ventilate the issues involved in the matter.'" Id. at 1, n.1 (quoting Gospel Missions of America v. City of Los Angeles, 328 F.3d 548, 553 (9th Cir. 2003)). Plaintiff contends that, here, a *sua sponte* grant of summary judgment for plaintiff on the issue of duty is proper because there is no factual dispute concerning whether defendants owed a duty of care to AMIC in connection with the settlement offers and defendants cannot claim they did not have a full and fair opportunity to "ventilate" the issue of duty. Id. However, this contention contradicts plaintiff's claim that there are a myriad of genuine, factual disputes that need to be resolved by the jury in order to determine whether Gallagher owed a duty of care to AMIC in regards to the settlement offers. *See* id. at 10-13. This Court, therefore, declines to *sua sponte* grant summary judgment in

Under California law, "the existence and scope of duty are legal questions for the court." Merrill v. Navegar, Inc., 26 Cal.4th 465, 477 (2001); *see also* Sharon P. v. Arman, Ltd., 21 Cal.4th 1181, 1188 (1999); Jackson v. Ryder Truck Rental, Inc., 16 Cal.App.4th 1830, 1838 (1993). Thus, defendants properly move for summary judgment on this issue. However, defendants appear to be attempting to separate their duty toward AMIC regarding pre-litigation settlement negotiations from the general duty of care owed by an insurance defense counsel to an insurer in the pre-litigation phase. Although the parties do not dispute that an insurance company has a duty regarding settlement, defendants point to no authority or evidence supporting a finding that an attorney retained by an insurance company on behalf of an insured has a duty of care to the insurance company to act in regards to all legal issues except settlement. Therefore, this Court finds that, despite the very low threshold required to meet their initial burden on summary judgment, *see* Lujan, 497 U.S. at 885, defendants have failed to meet their burden of demonstrating an absence of a genuine issue of material fact regarding the issue of the duty of care owed by defendants to AMIC. *See* Adickes, 398 U.S. at 159-60. Therefore, defendants' summary judgment motion as to this issue is **DENIED**.

b. **Unclean Hands**

Defendants next argue that "AMIC's failure to settle the underlying claim within the limits of Mr. Martinez's liability policy precludes any right to recovery or contribution from the defendants because of the unclean hands doctrine." Mot. at 19. The unclean hands doctrine requires a party "who comes into equity must come with clean hands ... [and] closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however, improper may have been the behavior of the defendant." Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 814 (1945).

//

---

favor of plaintiff because it is unclear from the record presented that there is no genuine of material fact to be resolved on the issue of duty.

8                                                                                              06cv1157

Defendants contend that AMIC breached its duty to Martinez in regards to the settlement of Raymond's claim and that breach closed the door to AMIC's recovery here based on its unclean hands. *See* Mot. at 19. The parties agree that an insurer has a duty to settle a claim within its policy limits if it is reasonable to do so and that AMIC owed that duty to Martinez. *See* Mot. at 14; Opp. at 9. The parties also agree that an insurer will breach that duty if it violates the covenant of good faith and fair dealing that is implied in its contract with the insured. *See* Mot. at 15; Opp. at 9. Defendants contend, however, that plaintiff cannot recover from defendants the loss it incurred as a result of plaintiff's own failure to settle Raymond's insurance claim within the policy limits. Mot. at 19. Defendants explain that the conduct at issue need not be criminal or even warrant legal proceedings but need only violate equitable standards and relate to the subject matter of the complaint to invoke the unclean hands doctrine. Id. (citing Precision Instrument, 324 U.S. at 815; Brother Records, Inc. v. Jardine, 318 F.3d 900, 909 (9th Cir. 2003); Pond v. Ins. Co. of North America, 151 Cal.App.3d 280, 289-90 (1984)). According to defendants, plaintiff's failure to settle the claim within the policy limits constitutes such inequitable conduct to invoke the unclean hands doctrine. Id. at 19-24.

Plaintiff points out, in opposition, that a determination of whether the doctrine of unclean hands applies to a particular claim is a question of fact. *See* Opp. at 18 (citing Cross-Talk Prods., Inc. v. Jacobson, 65 Cal.App.4th 631, 641(1998) ("the doctrine of unclean hands is heavily fact dependent.")). Although both parties seek to have this Court weigh the facts and determine whether plaintiff's conduct rises to the level of bad faith in order to invoke the unclean hands doctrine, this Court finds it an inappropriate determination on summary judgment. *See* Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment."). Accordingly, defendants' motion for summary judgment based on this defense is DENIED.

### c. Proximate Cause

Defendants lastly contend that AMIC cannot prove defendants' alleged malpractice was the proximate cause of AMIC's injuries. Mot. at 24. In order to prevail on a legal malpractice claim, plaintiff must prove "the causation element according to the 'but for' test, meaning that the harm or loss would not have occurred without the attorney's malpractice." Viner v. Sweet, 30 Cal.4th 1232, 1235, 1241 (2003). In either litigation or transactional malpractice cases, the "'crucial causation inquiry is *what would have happened* if the defendant attorney had not been negligent." Id. at 1242 (emphasis in original). Defendants contend that plaintiff cannot present any evidence to support its claim that a more favorable outcome would have occurred absent defendants' alleged malpractice. *See* Mot. at 25. Defendants argue that any evidence presented in support of such a claim can only be speculative and, as such, inadmissible. Id.

Plaintiff, in opposition, notes defendants "ignore that California law provides that AMIC 'need not prove causation with absolute certainty, but only introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.'" Opp. at 22 (quoting Viner, 30 Cal.4th at 1243 (internal citations omitted)). Plaintiff claims that causation is historically a question of fact. Id. (citing Lysick v. Walcom, 258 Cal.App.2d 136, 153 (1968)("whether there was causation in fact is normally a fact issue for the jury except in those cases where reasonable men cannot differ.")). Plaintiff contends the causation analysis here clearly presents a factual determination. Id.

In support, plaintiff claims the undisputed evidence establishes that Gallagher's conduct at issue fell below the standard of care, *see* id. at 23-24, and it is for the jury to decide if Gallagher's failure to comply with the standard of care was a substantial cause of AMIC's injury. Id. at 24. Plaintiff claims that a determination of whether an "attorney's advice [(or lack thereof)] permitted the client to adequately weigh the risks involved in a given course of action." Id. (citing Sierra Fria Corp. v. Donald J. Evans, P.C., 127 F.3d 175, 180 (1st Cir. 1997)). Plaintiff also claims that a determination of "what AMIC

would have done had Gallagher fulfilled his obligations is also a triable issue of fact based on the testimony of the relevant AMIC claim manager ..." Id. at 24-25.

In explanation, plaintiff points to Honschopp's testimony in which he stated that "if he had been informed that Gallagher recommended that the claims investigation be suspended and that the claim should be settled for policy limits, he would have followed Gallagher's advice" but, instead, understood Gallagher had recommended additional investigation before acceptance or rejection of the policy limits demand based on Gallagher's approval of Anderson's draft letter in response to the November 9, 2004 offer letter. Id. at 25 (citing PSSMF ## 21, 22[9]). In addition, plaintiff points to Chudacoff's testimony that "he did not recall whether anyone contacted him to request an extension of time to respond to the policy limits demand (although he also said he would not have agreed if the basis of the extension was merely to continue investigating)." Id.; see PSSMF at 38. Plaintiff posits that the jury will need to determine if the outcome would have been different if Gallagher had contacted Chudacoff when he received the November 9, 2004 letter to request an extension based on his belated receipt of the settlement offer, a request which plaintiff claims "[e]xperienced counsel routinely agree ..." Id. (citing Long Decl. ¶ 14). Plaintiff thus argues there are conflicting facts surrounding the causation element which defeats defendants' motion for summary judgment. Id. at 26.

Defendants, in reply, point out that plaintiff cannot defeat a motion for summary judgment based on speculative harm supporting the causation element of a malpractice claim. Reply at 7 (citing Thompson v. Halvonik, 30 Cal.App. 4th 657, 661 (1997); Budd v. Nixen, 6 Cal.3d 195, 200 (1971); Loube v. Loube, 64 Cal.App. 4th 421, 426 (1998)).

---

[9] "PSSMF" refers to plaintiff's separate statement of material facts filed concurrently with its opposition brief. Defendants object to both of these statements on the grounds that the facts are irrelevant and immaterial, plaintiff misstates the testimony, plaintiff incorrectly cites the deposition transcript, the information is improper lay opinion and legal conclusion, lacks foundation, is speculation, and contains an incomplete hypothetical. See Doc. # 92-4 at 2, 3. Defendants' objections are unavailing. This testimony is clearly relevant and material and a comparison with Honschopp's deposition transcript reveals that the testimony is correctly stated and cited. Honschopp's lay opinion is properly presented to support his belief of what he might have done under different circumstances and does not render a legal conclusion. And it is unclear how this testimony lacks foundation, is speculative or contains an incomplete hypothetical. Therefore, defendants' objections to this testimony are OVERRRULED.

Defendants argue AMIC's claim that it would have settled at a more propitious time" but for the alleged malpractice is not supported by the facts. Id. Defendants explain that Honschopp's testimony concerning what he would have done if Gallagher had recommended settlement at the policy limits is "belied by comments and conclusions from AMIC personnel made contemporaneous with the original personal injury claim," pointing specifically to the fact that, in November 2004, Honschopp ordered a coverage analysis and appointment of coverage counsel in order to determine if an exclusion to Martinez' policy was applicable. Id. at 8. Defendants also claim that in October 2005, almost a year after the last settlement demand, "AMIC remained reluctant to tender its $300,000 liability policy limits" as evidenced by a home office memo dated September 21, 2005 reflecting a "position that 'there are obvious liability defenses for the tort side to argue.'" Id. at 9 (quoting Grebing Decl., Exh. 6). Defendants contend plaintiff's position that Honschopp's testimony supports its argument that AMIC would have settled abided by Gallagher's advice if given is speculative and cannot support a finding that there is genuine issue of material fact to be resolved as to causation.[10] Id.

Although defendants have met their initial burden on summary judgment as to this issue, plaintiff has sufficiently pointed to evidence, *i.e.*, Honschopp's testimony, that creates a genuine issue of material fact to be resolved by a jury as to whether, but for the alleged malpractice, the outcome of Raymond's claim would have been more favorable. *See* Viner, 30 Cal.4th at 1241. Defendants' evidence of conflicting testimony by other AMIC employees only confirms that a jury must determine which testimony is more credible. *See* Anderson, 477 U.S. at 255. Accordingly, defendants' motion for summary judgment based on lack of causation is DENIED.

//
//
//

---

[10] Defendants also cite to the deposition testimony of Nancy Gill, an attorney in AMIC's parent corporation's legal department, who testified that anything Gallagher or Anderson would have done if faced with different circumstances is pure speculation. Reply at 9 (citing Grebing Decl., Exh. 7).

**CONCLUSION AND ORDER**

Based on the foregoing, this Court finds that defendants have either failed to meet their initial burden on summary judgment or, where the initial burden has been met, plaintiff has sufficiently pointed to evidence that demonstrates the existence of a genuine issue of material fact to be resolved by the jury as to each of the issues presented by defendants in the instant motion. Accordingly, IT IS HEREBY ORDERED that defendants' motion for summary judgment is **DENIED in its entirety**.

DATED: February 7, 2008

JOHN A. HOUSTON
United States District Judge